COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Decker, Malveaux and Senior Judge Annunziata


GEORGIANNA LYNN AYERS

                                                         MEMORANDUM OPINION[*]

v.       Record No. 0124-16-3                                PER CURIAM
                                                                JULY 19, 2016

LYNCHBURG DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
R. Edwin Burnette, Jr., Judge

(James J. Angel, on brief), for appellant.

(Susan L. Hartman, Assistant City Attorney; Gary M. Coates,
Guardian *ad litem* for the minor child; Freeman, Dunn, Alexander,
Gay, Lucy & Coates, P.C., on brief), for appellee.


     Georgianna Lynn Ayers (mother) appeals the order that terminated her parental rights to her

child. Mother argues that the circuit court erred by overruling her motion to strike and terminating

her parental rights to her son. Upon reviewing the record and briefs of the parties, we conclude

that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit

court. See Rule 5A:27.

BACKGROUND

     We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother has a son, who was born in September 2005. The Lynchburg Department of Social Services (the Department) has been working with mother and her child since August 2006. Mother has a history of substance abuse and mental health problems.

In September 2013, mother was arrested for distribution of a Schedule II controlled substance. The child was placed with his aunt, Jennifer Walters. In May 2014, the Department received a complaint that Walters had withdrawn the child from counseling, stopped his day treatment at school, and may have been physically abusing him. In July 2014, the Department received another complaint, which led to his removal from Walters' home. Walters filed a petition to be relieved of custody of the child. The child was placed in foster care and resumed his counseling.

In December 2014, mother was released from jail and placed on probation. Mother tested positive for marijuana on April 17, 2015 and May 5, 2015. At the January 5, 2016 termination hearing, mother admitted that she would test positive for marijuana and Klonopin.

The Department referred mother for a psychological evaluation, which was conducted by Dr. A.J. Anderson. Dr. Anderson diagnosed mother with "unspecified bipolar or other mood disorder;" substance use disorder; dependent, narcissistic, and antisocial personality; and parent-child relational problem. Dr. Anderson determined that mother demonstrated "borderline intellectual functioning." He also noted that mother "evidences a number of problems with emotional and personality functioning that are likely to limit her effectiveness in the parent role, including erratic moods, poor judgment, and excessive self-focus." He further opined that mother's "excessive self-focus and her depression are likely to limit her emotional availability to a child. Her erratic moods and poor judgment are likely to be experienced by a child as confusing and anxiety-arousing."

Mother also participated in a neuropsychological evaluation, which was conducted by Dr. J.C. Conley, Jr. Dr. Conley diagnosed mother with ADHD and borderline personality disorder. He also noted that the "results of personality assessment are positive for alienating others with her socially inappropriate behavior, associated with little or no awareness that she does so, unresolved dependency and anger conflicts, inability to express anger in a modulated fashion, mental rigidity, and significant difficulty adapting to change."

The Department arranged visitations between mother and the child. Mother regularly attended the visits; however, the Department repeatedly had to remind mother to avoid adult conversations with the child and to curb her emotions around him. Mother was overly affectionate with the child and would discuss whether he would be coming home. The child became very anxious, and he would become agitated before, during, and after the visits.

Dr. Deborah Maxey conducted a trauma and attachment assessment on mother and the child. Dr. Maxey noticed that the child was very anxious around mother. She described their relationship as "extremely dysfunctional." Dr. Maxey also testified that she would have "grave concerns" if the child was placed back in mother's custody because she would not be able to meet the child's needs.

The Department referred mother to counseling with Mary Rice. Although Rice saw mother making some progress, there were times when mother would revert "back at square one position," especially when she was stressed. Rice observed the visits between mother and her child. Rice opined that mother truly loved her child, but did not know how to be a good parent. She also noticed that the child experienced anxiety during the visits, but mother was not able to discern when the child was becoming anxious.

Rice also worked with mother on her substance abuse issues. Mother had smoked marijuana for a long time and did not see it as a problem. Mother testified that she completed

her substance abuse classes on September 21, 2015, but admitted to using marijuana several times in 2015 and at least once since September 2015. She understood that her use of marijuana could lead to revocation of her probation.

Mother attended parenting classes, but did not complete them. She moved outside of Lynchburg, which affected her ability to participate in some services.

The Department presented evidence that the child was doing well in foster care. He thrived in a stable environment and excelled in school. When the visits with his mother ended, the child became less anxious.

The Lynchburg Juvenile and Domestic Relations District Court (the JDR court) terminated mother's parental rights on September 21, 2015.[1] Mother appealed to the circuit court.

On January 5, 2016, the parties appeared before the circuit court. After hearing all of the evidence and argument, the court found that mother had not made any substantial progress. The court held that it was in the child's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(C)(2). On January 14, 2016, the circuit court entered an order memorializing its ruling. This appeal followed.

## ANALYSIS

"Where, as here, the [circuit] court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

---

[1] The JDR court also terminated the biological father's parental rights to the child.

Mother argues that the circuit court erred in terminating her parental rights.[2] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Mother acknowledges that the Department has been involved with her family since the child was one year old; however, she notes that the Department never removed the child from her care. It was not until the child was ten years old and in his aunt's care that he was removed. At the time, mother was in jail and was not released until approximately four months after the child was placed in foster care. Mother asserts that once she was released, she complied with the Department's requests. She participated in a psychological assessment, substance abuse assessment, counseling, and parenting classes. She regularly attended visitations with her child.

The circuit court acknowledged mother's minimal cooperation with the Department. However, as the court noted, "It's doing more than just going. It's listening, understanding, and showing some changed behavior and that you're getting what they're telling you." Mother started counseling sessions with Rice in January 2015. The court recognized that although Rice saw "glimpses or moments of improvement," she also found that there was no "substantial or sustained progress." The court also recalled Rice's opinion that mother was not "stable enough to take on the responsibilities of [the child] in addition to dealing with your own."

---

[2] In her opening brief, mother discusses Code § 16.1-283(B) and (C)(2) regarding the termination of parental rights; however, the trial court did not terminate mother's parental rights pursuant to Code § 16.1-283(B). Therefore, our focus will be on the trial court's decision to terminate mother's parental rights pursuant to Code § 16.1-283(C)(2).

In addition to mother's deficiencies in parenting skills, the circuit court found that mother did not see marijuana as a problem and "until she recognizes that it is a problem she has not substantially remedied a very important condition."

Contrary to mother's arguments, the circuit court did not err in denying her motion to strike and terminating her parental rights pursuant to Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The evidence proved that mother was unable to remedy the situation that led to the child remaining in foster care. Despite the services offered to her, mother still could not recognize and meet her child's needs. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Accordingly, the circuit court did not err in terminating mother's parental rights.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.